IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ANGELA STEVENS, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| vs. | ) Case No.: CIV-13-1346-R |
| | ) |
| GOODMAN NETWORKS INCORPORATED, | ) ) |
| | ) |
| DEFENDANT. | ) |

## COMPLAINT

Plaintiff, Angela Stevens, by and through her counsel, Ray Tompkins, OBA #9058 and Brice W. Bisel, OBA #30986, hereby complains against Defendant Goodman Networks Incorporated, as follows:

## NATURE OF CASE

1. Plaintiff alleges a claim pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et. seq* ("Title VII") for sex/gender discrimination, harassment, hostile work environment, and wrongful termination. Plaintiff also brings a state law cause of action for a wrongful discharge in violation of the Oklahoma Anti-Discrimination Act based upon sex/gender discrimination, *see* 25 O.S. §1101 *et seq*.

2. Plaintiff also alleges a claim of illegal retaliation in violation of Title VII and the Oklahoma Anti-Discrimination Act.

## JURISDICTION AND VENUE

3. The jurisdiction of this Court is invoked pursuant to 42 U.S.C. 2000e-5(f)(3). Plaintiff also brings a pendant state law claim under 25 O.S. §§1101 *et. seq*. This Court also has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

4. Venue in this district is proper pursuant to 28 U.S.C. § 1391 (b) and (c), because Defendant operates in this district and the unlawful conduct giving rise to the claims occurred in this district.

5. Declaratory, injunctive, and equitable relief is sought pursuant to 28 U.S.C. §§2201 and 2202, and 42 U.S.C. §2000e-5(g). Compensatory and punitive damages are also sought pursuant to 42 U.S.C. §1981a.

6. Costs and attorneys' fees may be awarded pursuant to 42 U.S.C. §2000e-5 and Fed. R. Civ. P. 54.

7. This action properly lies in the District Court for Eastern District of Oklahoma pursuant to 28 U.S.C. §1391(d), because all Defendants operate in this district, pursuant to 28 U.S.C. §1391(b), because the claim arose in this judicial district, and pursuant 42 U.S.C. §2000e-5, because the unlawful employment practice was committed in this judicial district.

## PARTIES

8. Plaintiff, Angela Stevens, a female, is an individual citizen and resident of the United States and the State of Oklahoma. At all times relevant herein, Plaintiff was a resident of Oklahoma City, Oklahoma.

9. Plaintiff is a former employee of Defendant.

10. Defendant Goodman Networks Inc., is Foreign For Profit Business registered with the Oklahoma Secretary of State.

11. Defendant Goodman Networks Inc. maintains offices throughout the United States.

12. Plaintiff was formerly employed by Defendant at its Oklahoma City location.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

13. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about February 26, 2013; EEOC Charge Number 564-2013-00488.

14. Plaintiff was issued a notice of right to sue dated September 23, 2013, and this lawsuit is filed within ninety (90) days of Plaintiff's receipt of such notice, as such notice was received by Plaintiff's counsel on September 25, 2013.

15. Plaintiff's charges were also filed timely within the 180-day window provided by the Oklahoma Anti-Discrimination Act.

16. Plaintiff has exhausted her administrative remedies under federal and state law.

## GENERAL ALLEGATIONS

17. On or about August 20, 2012, Plaintiff began her employment with Defendant as a Project Manager.

18. Prior to Plaintiff's beginning of her employment with Defendant, she applied to work for Defendant on many occasions, routinely having male employees with less experience and qualifications be hired over her.

19. Throughout her employment, Plaintiff was the only female project manager in the facility, and one of only three female project managers in the entire Southwest district.

20. Upon hire, Plaintiff learned that her supervisor was to be a Mr. Terry Stanford.

21. Mr. Terry Stanford and Plaintiff were previous contractors with another employer.

22. At an industry function, Mr. Stanford grabbed Plaintiff's breasts in front of others, an action which caused Plaintiff to tell Mr. Stanford to keep his hands off of her, causing great embarrassment to Mr. Stanford.

23. Approximately one month after beginning her employment with Defendant, Plaintiff began experiencing differential treatment from her supervisor, Mr. Stanford, in comparison to her male counterparts.

24. Mere weeks after attending an office party, Plaintiff offered to two co-workers and an executive a ride back to their hotel.

25. Upon arriving at the hotel, Mr. Colby Empey refused to exit Plaintiff's car.

26. At this time, Mr. Empey repeatedly asked Plaintiff to go to a "strip club."

27. At Mr. Empey's request, Plaintiff continued to sit in her car and speak with him, while he remained in the back seat of her vehicle.

28. Plaintiff expressed to Mr. Empey that she had submitted her resume many times in an attempt to be hired by Defendant. Mr. Empey explained to Plaintiff that he had been "cock-blocking" her resume.

29. At this time, Plaintiff turned towards the back of her car and demanded an explanation from Mr. Empey, at which time Mr. Empey grabbed Plaintiff and attempted to forcibly kiss her.

30. Plaintiff rebuffed this attempt by Mr. Empey and told him to get out of her vehicle.

31. Mr. Empey continued to harass Plaintiff before exiting her vehicle, telling her "you want it, let's go up to my room," and "if you're worried about people seeing us, I'll get you a different room."

32. Plaintiff rebuffed these sexual advances and demanded that Mr. Empey leave her vehicle, at which time she immediately left and returned to her home.

33. In the following month, Plaintiff began to experience increased levels of disparate treatment, hostility, and harassment from her male supervisor(s) and co-workers.

34. Throughout the fall and winter of 2012, Plaintiff was continually given projects with little to no supporting staff, while her male counterparts had multiple supporting staff members available to assist them at all times.

35. Plaintiff repeatedly asked for assistance with her projects and demanded that she be given the proper supporting staff to complete the projects in a timely manner.

36. On multiple occasions in December 2012, Plaintiff contacted Terry Stanford by e-mail and explained that she had little to no supporting staff, while her male counterparts had the proper levels of supporting staff.

37. Mr. Stanford denied her requests, gave multiple excuses for her lack of supporting staff and harassed her regarding her work performance.

38. Any issues with Plaintiff's work performance at this time stemmed solely from her lack of proper levels of supporting staff.

39. In December 2012, Plaintiff sought medical treatment for extreme migraine headaches, which her doctors confirmed stemmed solely from the stress induced by her treatment at work.

40. In mid to late January 2013, Plaintiff met with Trish Garner in Human Resources to express her complaints of sexual harassment and gender discrimination.

41. At this time, Plaintiff was assured that her complaints would be thoroughly investigated.

42. From this moment on, Plaintiff began experiencing extensive incidents of retaliation by Mr. Stanford and other male employees. Mr. Stanford even attempted to sabotage Plaintiff's work performance by firing a highly qualified female support staff employee of Plaintiff's.

43. In late January 2013, a male subordinate informed Plaintiff that Mr. Stanford told him not to talk to her because she'd filed a discrimination complaint.

44. Mere days after filing her internal complaint, Mr. Stanford verbally humiliated Plaintiff in front of her AT&T client and told multiple peers not to speak to her.

45. On February 5, 2013, Plaintiff was removed from a project in front of her peers for no reason. Such project was given to her male subordinate.

46. On February 7, 2013, Plaintiff was removed from her managerial role on another project and given primarily secretarial duties associated with the project.

47. On February 7, 2013, Plaintiff advised Trish Garner of these instances of retaliation.

48. On February 8, 2013, Plaintiff was informed that there were complaints of her playing "loud music" in her office. The only sound from Plaintiff's office was a cell-phone ringtone that range a few times because Plaintiff was not at her desk. A male employee in the office frequently played loud music but was never reprimanded for doing so.

49. In late February 2013, Plaintiff filed her charge of discrimination with the EEOC.

50. Throughout the spring of 2013, Plaintiff continued to be refused proper support staff with her projects, was continually shunned by her peers, and continually belittled and harassed by Mr. Stanford.

51. After filing her internal and external complaints of discrimination and retaliation, Plaintiff received her performance review from Mr. Stanford.

52. Such performance review awarded Plaintiff low performance scores.

53. Such low scores were absolutely not indicative of Plaintiff's actual work performance and stemmed solely from Mr. Stanford's retaliatory animus towards Plaintiff.

54. On May 31, 2013, Plaintiff was assigned to a new project that had been neglected by others. She was given no support staff for the project and informed that she had one week to complete a major milestone on the project, despite the fact that her peers were given 1-2 months to complete similar milestones.

55. On June 3, 2013, Plaintiff was given an inexperienced individual as her support staff for the project, despite the availability of other experienced support staff members. These experienced support staff members were given to her male counterparts.

56. On July 19, 2013, a co-worker informed Plaintiff that Mike Edington told him not to associate with her because "she is in a lawsuit with Goodman." This employee was terminated approximately one week after Plaintiff spoke to human resources about this information.

57. Plaintiff was informed on two other occasions by co-workers that they had been told the same thing.

58. Plaintiff reported this retaliation to Trish Garner, who subsequently called Plaintiff and became very hostile on the phone.

59. Throughout this period of employment, the disparate and retaliatory treatment of Plaintiff did not cease, continuing and worsening the hostile work environment which existed for nearly the entirety of Plaintiff's employment with Defendant.

60. Plaintiff's medical condition continued to worsen due to such treatment at work.

61. On July 23, 2013, Plaintiff submitted her resignation, effective August 6, 2013 due to the constant harassment, discrimination, and retaliation in her workplace.

62. The atmosphere in which Plaintiff was forced to work led to the exacerbation of her serious medical condition.

63. A reasonable person in Plaintiff's position would feel that they had no choice but to resign.

64. As such, Plaintiff's constructive discharge amounts to a wrongful termination.

65. Defendant's actions against Plaintiff throughout her employment constituted illegal sexual harassment, gender discrimination and retaliation.

66. Defendant is liable for the illegal actions of the members of management whose illegal conduct is demonstrated throughout this complaint. *See generally Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).

67. Plaintiff believes that this treatment was motivated her sex/gender or in retaliation for her opposing the sexual advances against her, her internal

complaint of discrimination and her EEOC complaint of discrimination and retaliation.

68. At the time of Plaintiff's termination, she was being paid at the rate of approximately $80,000.00 per year.

69. As a result of Defendant's actions, Plaintiff has sustained loss of employment, loss of seniority, loss of career path, loss of wages, loss of fringe benefits, and other compensation; and consequential and compensatory damages including, but not limited to, those for humiliation, loss of dignity, loss of enjoyment of life, worry, stress, and anxiety.

70. All adverse actions taken by Defendant against Plaintiff were intentional, willful, malicious, and/or with reckless disregard for the legal rights of Plaintiff.

## COUNT I

**Discrimination Based Upon Gender/Sex, in Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.* and the Oklahoma Anti-Discrimination Act, 25 O.S. §1302**

71. Plaintiff reasserts and incorporates by reference paragraphs 1-70 as set forth above as if fully restated herein.

72. Defendant's actions in repeatedly subjecting Plaintiff to illegal sexual harassment, disparate treatment, and discrimination, as described above,

constitute discrimination based upon gender/sex, in violation of Title VII and the OADA.

73. These actions also created a hostile work environment, in clear violation of Title VII and the OADA.

74. Defendant's willful and malicious misconduct as described above, in discriminating against and terminating Plaintiff based upon her sex/gender are in violation of Title VII and the OADA.

75. Plaintiff's gender was a motivating factor in Defendant's adverse employment-related actions described above, including without limitation: the creation of a hostile work environment, continued harassment and disparate treatment, and ultimately her termination. Defendant violated Plaintiff's civil rights by taking such adverse actions.

76. As a result of Defendant's illegal conduct, Plaintiff has suffered losses, injury, and damages, as set forth in paragraphs 68-70, above.

77. Plaintiff is entitled to and seeks all legal and equitable remedies provided to a prevailing plaintiff under Title VII and the OADA, including, without limitation: back pay, front pay, liquidated damages, compensatory and punitive damages, as well as appropriate declaratory and injunctive relief.

78. Plaintiff is also entitled, under 42 U.S.C. § 2000e-5(k) to recover attorney fees and costs incurred in pursuing this claim.

**COUNT II**

**Retaliation for Protected EEOC Activity in Violation of 42 U.S.C. §2000e-3(a) and the Oklahoma Anti-Discrimination Act**

79. Plaintiff reasserts and incorporates by reference paragraphs 1-78 as set forth above as if fully restated herein.

80. 42 U.S.C. §2000e-3(a) makes it illegal to discriminate/retaliate against an " individual [who] has opposed any act or practice made unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act."

81. Plaintiff clearly opposed the illegal harassment when she rejected the sexual harassment and sexual advances made towards her.

82. Plaintiff also clearly opposed the illegal discrimination and retaliation when she complained to her supervisor about the disparate treatment throughout the fall and winter of 2012.

83. Plaintiff continued to oppose the discriminatory and retaliatory actions being taken against her by complaining to human resources in January-July 2013.

84. Plaintiff also opposed the discriminatory and retaliatory actions by participating in the EEOC administrative process by filing an EEOC charge in late February 2013.

85. Such opposition and participation is clearly protected activity.

86. The actions taken against Plaintiff after her opposition to Defendant's unlawful conduct, including, but not limited to: repeated harassment, isolation of Plaintiff from other employees, unjustified discipline and continued disparate

treatment are all clearly retaliatory actions designed to prevent her from exercising her rights under Title VII and the OADA.

87. Defendant's conduct as described above is in clear violation of Title VII and the OADA provisions prohibiting such retaliation and discrimination.

88. As a result of Defendant's illegal conduct under Title VII, Plaintiff has suffered losses, injuries, and damages, as set forth in paragraphs 68-70, above.

89. Plaintiff is entitled to and seeks all legal and equitable remedies provided to a prevailing plaintiff under Title VII and the OADA, including, without limitation: back pay, front pay, liquidated damages, compensatory and punitive damages, as well as appropriate declaratory and injunctive relief.

90. Plaintiff is also entitled, under 42 U.S.C. § 2000e-5(k), to recover attorney fees and costs incurred in pursuing this claim.

## PRAYER FOR RELIEF

WHEREFORE, it is respectfully prayed that this Court grants to the Plaintiff the following relief:

    a. Back pay, in amounts to be determined at trial;

    b. Liquidated and punitive damages;

    c. Compensatory and consequential damages;

    d. Injunctive and/or declaratory relief;

    e. Pre-judgment and post-judgment interest at the highest lawful rate;

f.  Attorneys' fees and costs of this action, including expert witness fees, as appropriate;

g.  That Defendant be enjoined and restrained from engaging in further discriminatory conduct; and

h.  Any such further relief as justice allows.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests trial by jury of all issues triable by jury under Oklahoma and Federal law.

Dated:  12/23/2013

Respectfully submitted,

s/ Brice W. Bisel
Brice W. Bisel, OBA #30986
Ray Tompkins, OBA#9058
Mazaheri Law Firm, PLLC
3445 W. Memorial Rd. Suite H
Oklahoma City, OK 73134
Telephone: 405-607-4357/ 405-607-4358 (Fax)
Ray@mazaherilawfirm.com
brice@mazaherilawfirm.com
*Attorney for Plaintiff*

**Attorney's Lien Claimed**